UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DAVID DENNARD McKINNEY,

                    Petitioner,

v.                                         CASE NO. 08-14834
                                           HONORABLE JOHN CORBETT O'MEARA
NICK LUDWICK,

                    Respondent.
_____/

## OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION, BUT GRANTING A CERTIFICATE OF APPEALABILITY

Petitioner David Dennard McKinney has filed a  habeas corpus petition challenging his

state court convictions for Felony Murder and Accessory after the Fact to Arson.  The

convictions arose from the death of Clyde Alexander during a fire at Alexander's Gun Shop in

Inkster, Michigan in 2004.  Petitioner was sentenced to life imprisonment without parole for his

felony murder conviction and two to five years for his accessory-after-the-fact conviction.

Petitioner alleges through counsel that (1) his statement to the police should not have been

admitted in evidence because the police took his statement in violation of his right to counsel, (2)

there was insufficient evidence to convict him of Felony Murder, (3) there was insufficient

evidence to convict him of Accessory after the Fact to Arson, and (4) the prosecutor's opening

statement and closing arguments contained inappropriate comments, which resulted in

prosecutorial misconduct.  Respondent Nick Ludwick urges the Court through counsel to deny

the petition.  The Court agrees that Petitioner is not entitled to the relief he seeks.  Accordingly,

the habeas petition will be denied.

## I. Background

## A. The Facts, Jury Verdict, and Sentence

Petitioner was charged in an amended information with Felony Murder and Accessory after the Fact as to Arson. The prosecutor proceeded against Petitioner on an aiding and abetting theory.

The evidence at trial established that, on August 3, 2004, police responded to a fire at Alexander's Gun Shop in Inkster, Michigan. It took several hours to suppress the fire because exploding ammunition kept firefighters from approaching the building and the roof collapsed. When the fire was extinguished, police discovered the body of Clyde Alexander, one of the store's owners. The medical examiner's report showed that, although he had been beaten before death, he died of smoke inhalation and burns on 98% of his body. A plastic tie-cuff was attached to his wrist, with another tie attached to it. After further investigation, the police determined that the fire had been intentionally set with accelerants and about ninety guns were missing from the store.

While Petitioner was being held on other charges, police advised him of his *Miranda* rights[1] and questioned him about the fire. During this initial interrogation, Detective Delgreco informed Petitioner what an informant had said. At that point, Petitioner put his head down by his knees and said, "I planned it." He immediately asked for his attorney, and the interrogation stopped. As Detective Delgreco returned Petitioner to his cell, he informed Petitioner that the death penalty was an option if the case were tried in federal court. The next morning, Detective Delgreco was in Petitioner's cellblock for other reasons when the Petitioner called him to his cell and asked to talk about the case. First, the detective told Petitioner that he could not talk about

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

the case because Petitioner had invoked his right to a lawyer. But, after he was reread his *Miranda* rights and agreed to waive them, Petitioner gave a written statement.

In the statement, Petitioner explained that he was at a friend's house when the topic of robbing the gun store came up. He agreed to plan the robbery and serve as a lookout in return for $500. Petitioner spent a week planning the robbery and obtained a layout of the store. The plan was to get in and out of the store quickly. On the day in question, he and five other men stopped at the Marathon Station to "gas up" and then rode to the gun shop in two vehicles; they parked behind the store. Petitioner remained in one of the vehicles while one man entered the front of the store and three other men entered the rear of the store. When the men returned to the car fifteen to twenty minutes later with guns, Petitioner saw smoke coming from the building and asked about it. One of the men told him that "shit got wild." They left the area, and Petitioner asked to be dropped off a short time later. He did not learn about the fire or Mr. Alexander's death until the next day, and he claimed that the fire and murder were not part of the plan. (Tr. Aug. 23, 2005, at 75-77.)

Petitioner moved to suppress his statement, but the trial court denied his motion after conducting an evidentiary hearing on the issue. Petitioner's written statement to the police and his prior statement that he "planned it" were the only pieces of evidence linking Petitioner to the crime. He did not testify or present any witnesses at trial. His defense was that he was involved in the incident but was not guilty of felony murder or arson because there was no evidence that he planned a murder or an arson or knew what was going to happen.

On August 24, 2005, a Wayne County Circuit Court jury found Petitioner guilty, as charged, of Felony Murder, Mich. Comp. Laws § 750.316(1)(b), and Accessory after the Fact to

Arson, Mich. Comp. Laws § 750.505.  The trial court sentenced Petitioner to life imprisonment for the murder and to a concurrent term of two to five years for being an accessory after the fact to arson.

### B. Post-Conviction Proceedings

Petitioner raised his habeas claims in a motion for new trial, which the trial court denied, and in an appeal of right.  The Michigan Court of Appeals affirmed his convictions in an unpublished *per curiam* opinion.  *See People v. McKinney*, No. 269823, 2007 WL 2807961 (Mich. Ct. App. Sept. 27, 2007).[2]  The Court of Appeals found that Detective Delgreco's statement that Petitioner could be facing the death penalty was an improper interrogation, but that the trial court did not err by admitting the statement because enough time had passed between Delgreco's improper comment and Petitioner's statement the next day, such that the coercive effect of Delgreco's comment had diminished.

The Court of Appeals also found that there was sufficient evidence to convict Petitioner of both Felony Murder and Accessory after the Fact to Arson.  The Court of Appeals stated that, "by planning the larceny of a gun shop, even though defendant did not plan the death of Alexander and . . . did not go into the shop during the larceny, defendant set in motion a series of events that was likely to cause death or great bodily harm." *Id.* at *5.  The Court of Appeals determined that there was enough evidence for the jury to infer that Petitioner and the other men had purchased gasoline to start the fire and that Petitioner drove away with the others knowing

---

[2] Judge William C. Whitbeck wrote a separate opinion in which he concurred in part and dissented in part.  Judge Whitbeck disagreed with the majority's conclusion that the detective's statement about the death penalty constituted impermissible interrogation, but he concurred with the remainder of the majority's opinion.

there was a fire.  *Id.*

The Michigan Court of Appeals also rejected Petitioner's claim of prosecutorial misconduct.  It found that the prosecutor's statements were not improper, were made in good faith, were cured by a jury instruction, were not properly objected to at trial, or were not prejudicial to Petitioner.  *Id.* at *6-9.  Petitioner raised the same issues in the Michigan Supreme Court, which denied leave to appeal on June 25, 2008, because it was not persuaded to review the issues.  *See People v. McKinney*, 750 N.W.2d 590 (Mich. 2008) (table).[3]

### C.  The Habeas Petition and Answer

Petitioner filed his habeas corpus petition pursuant to 28 U.S.C. § 2254 (1996) on November 18, 2008.  He raises essentially the same claims that he raised in state court:  (1) his convictions were based upon a confession given in violation of the Sixth Amendment, (2) there was insufficient evidence to convict him of Felony Murder, (3) there was insufficient evidence to convict him of Accessory after the Fact to Arson, and (4) he was denied a fair trial due to prosecutorial misconduct during the opening statement and closing arguments.

Respondent argues in an answer to the habeas petition that the state court's adjudication of Petitioner's first three claims was not contrary to, or an unreasonable application of, Supreme Court precedent.  Respondent contends that portions of Petitioner's fourth claim (prosecutorial misconduct) are barred from review by Petitioner's procedural default of failing to object to the claimed misconduct during trial.  Petitioner has not filed a reply or a supporting brief, and to the extent that his claims are unclear, the Court has looked to his state court brief for clarification.

_____

[3] Justice Marilyn Kelly voted to reverse and remand the case for a new trial. She provided no reasons for her vote.

## II.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs the

Court's habeas corpus review of state court decisions.  Specifically, 28 U.S.C. § 2254(d)

provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Furthermore, all factual determinations made by a state court are presumed

correct for purposes of review.  This presumption may be rebutted only with clear and

convincing evidence.  28 U.S.C. § 2254(e)(1); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir.

2001).

Granting a habeas petition under the "contrary to" clause is only appropriate "if the state

court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of

law or if the state court decide[d] a case differently than [the Supreme] Court has on a set of

materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 326, 412-13 (2000).  A state

court's decision is an "unreasonable application" of clearly established federal law "if the state

court identifies the correct governing legal principle from the [Supreme] Court's decisions, but

unreasonably applies that principal to the facts of the prisoner's case."  *Id.* at 413.  "[A] federal

habeas court may not issue the writ simply because that court concludes in its independent

judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Instead, it must ask "whether the state court's application of clearly established federal law was objectively unreasonable." *Id.*

## III. Discussion

### A. Petitioner's Custodial Statement

Petitioner first contends that his statement to the police was inadmissible because, after he invoked his right to counsel and was being escorted to his cell, Detective Anthony Delgreco informed him that he could get the death penalty if he were charged under federal law. On review of this claim, the Michigan Court of Appeals decided that Detective Delgreco's comment about the death penalty constituted interrogation, but that enough time passed between the improper interrogation by Delgreco and Petitioner's statement the next morning that the coercive effect of the interrogation had subsided. *McKinney*, 2007 WL 2807961 at *2-3. Therefore, it found the statement was properly admitted in evidence. *Id.*

Petitioner raises his claim under the Sixth Amendment to the United States Constitution. The Sixth Amendment right to counsel is offense-specific and attaches when a prosecution commences and a suspect is charged with a crime even if he previously retained counsel. *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991); *Moran v. Burbine*, 475 U.S. 412, 430 (1986). Because Petitioner had not been charged at the time of his interrogation, his Sixth Amendment right to counsel was not violated even though he already had an attorney.

In state court, Petitioner also raised his claim under the Fifth Amendment to the United States Constitution. He claimed that Detective Delgreco's death-penalty statement was an improper interrogation following his invocation of the right to counsel and therefore his response

to the interrogation was inadmissible.  The Court assumes that Petitioner is making the same argument here.

### 1.  Clearly Established Law

"To give force to the Constitution's protection against compelled self-incrimination, the [Supreme] Court established in *Miranda* 'certain procedural safeguards that require police to advise criminal suspects of their rights under the Fifth and Fourteenth Amendments before commencing custodial interrogation.'" *Florida v. Powell*, __ U.S. __, __, 130 S. Ct. 1195 , 1203 (2010) (quoting *Duckworth v. Eagan*, 492 U.S. 195, 201 (1989)).  "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda*, 384 U.S. at 444.[4]  If at any stage of the process, the defendant indicates that he wishes to consult with an attorney or does not wish to be interrogated, the police may not question him.  *Id*. at 444-45; *Montejo v. Louisiana*, __ U.S. __, __, 129 S. Ct. 2079, 2089-90 (2009).  An accused who has "expressed his desire to deal with the police only through counsel [] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).  "*Edwards* establishes a *presumption* that a suspect's waiver of *Miranda* rights is involuntary." *Maryland v.*

---

[4]  "The right to counsel established in *Miranda* was one of a 'series of recommended "procedural safeguards" . . . [that] were not themselves rights protected by the Constitution but were instead measures to insure that the right against compulsory self-incrimination was protected.'" *Davis v. United States*, 512 U.S. 452, 457 (1994) (quoting *Michigan v. Tucker*, 417 U.S. 433, 443-444 (1974)).

*Shatzer*, __ U.S. __, __, 130 S. Ct. 1213, 1223 n.7 (2010) (emphasis in original).[5]  The rule "is

'designed to prevent police from badgering a defendant into waiving his previously asserted

*Miranda* rights.'"  *Minnick v. Mississippi*, 498 U.S. 146, 150 (1990) (quoting *Michigan v.*

*Harvey*, 494 U.S. 344, 350 (1990)).  It "ensures that any statement made in subsequent

interrogation is not the result of coercive pressures."  *Id*. at 151.

## 2.  The Facts

A review of the record reveals that Petitioner was arrested on an unrelated charge on

August 20, 2004.  Detective Anthony Delgreco advised Petitioner of his constitutional rights at

the Inkster Police Station where Petitioner waived his rights and agreed to talk with the

detective.  During the subsequent conversation, Detective Delgreco informed Petitioner of the

evidence against him and what witnesses had said about the incident at Alexander's Gun Shop.

Petitioner listened and then blurted out, "I planned it."  He subsequently asked for his attorney,

and Detective Delgreco stopped the interview.  As Detective Delgreco escorted Petitioner to his

cell, he informed Petitioner that the police still did not know whether state or federal prosecutors

would handle the case, but that death was a possible penalty at the federal level.[6]

On the following morning, Detective Delgreco returned to Petitioner's cell block to make

a routine head count.  As he passed Petitioner's cell, Petitioner asked to speak with him.

---

[5]  The Supreme Court determined in *Shatzer* that the *Edwards* presumption of involuntariness does not last indefinitely and that confessions obtained after a two-week break in custody and a waiver of *Miranda* rights are not compelled.  The *Shatzer* holding is not applicable here because there was no break in custody between Petitioner's invocation of the right to counsel and Detective Delgreco's comment about the death penalty.

[6]  The Federal Bureau of Alcohol, Tobacco and Firearms (ATF) investigated the case because the gun shop was a federally licensed gun dealership.

Detective Delgreco reminded Petitioner that he had requested counsel the night before and that no further questioning could occur in the absence of counsel. Petitioner insisted on talking with Delgreco and stated that he wanted to hear what evidence the federal agent had against him. He agreed to talk without his attorney present. Delgreco proceeded to type up a waiver, which stated that Petitioner saw Detective Delgreco in the cell block and asked Delgreco whether he could hear what the federal agent had to say about the case. The waiver also stated that Detective Delgreco contacted the ATF agent involved in the case and then read the *Miranda* rights to him.

Petitioner, Detective Delgreco, and ATF agent Raymond Tomaszewski signed the typewritten waiver. Detective Delgreco then re-read the *Miranda* rights to Petitioner and took his statement regarding the incident at the gun shop and how everything was planned. ATF agent Tomaszewski asked Petitioner to sign an affidavit swearing to the same facts.

The parties agree that Petitioner was "in custody" when he made his incriminating statements to the police, that he invoked his right to counsel, and that Detective Delgreco then ceased interrogating him. The issues are (1) whether Detective Delgreco's subsequent comment that Petitioner could be charged in federal court where the maximum penalty was death amounted to interrogation, (2) whether Petitioner's subsequent comments amounted to initiation of contact with the police, and (3) whether Petitioner's waiver of his right to counsel and his incriminating statements were voluntary and knowing.

### 3. Whether there was an Interrogation following the Invocation of the Right to Counsel

Interrogation "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police

10

should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). One could argue that informing Petitioner that both state and federal authorities were evaluating his case and that the death penalty was possible under federal law did not constitute the functional equivalent of interrogation. *See United States v. Blake*, 571 F.3d 331, 340-41 (4th Cir. 2009) (concluding that giving the defendant a statement of charges thirty-five minutes after the defendant asked for an attorney did not constitute the functional equivalent of interrogation even though the statement of charges informed the defendant of the evidence against him and the fact that the maximum penalty for the charge was the death penalty), *cert. denied*, __ U.S. __, 130 S. Ct. 1104 (2010). Delgreco's comment about the death penalty could be understood as an incentive to cooperate or "subtle compulsion," which is not the functional equivalent of interrogation. *Innis*, 446 U.S. at 303; *Blake*, 571 F.3d at 343.

The Michigan Court of Appeals determined in its majority opinion that Detective Delgreco's comment about the death penalty was interrogation because there could be no other purpose to Delgreco's statement than to elicit a response from Petitioner. Assuming this is true, Delgreco violated the *Edwards* rule by interrogating Petitioner after he invoked his right to counsel and before Petitioner had an opportunity to consult with his attorney.

### 4. Whether Petitioner Initiated Contact with the Police

A defendant has reinitiated conversation with the police when, without being influenced by the authorities, he expresses a willingness and generalized desire to talk about his case. *Oregon v. Bradshaw*, 462 U.S. 1039, 1045-46 (1983); *United States v. Whaley*, 13 F.3d 963, 967 (6th Cir. 1994). However, "the 'initiation' must come prior to the further interrogation . . ."

*United States v. Gomez*, 927 F.2d 1530, 1539 (11th Cir. 1991).  In other words, "initiation only becomes on issue if the agents follow *Edwards* and cease interrogation upon a request for counsel.  Once the agents have . . . violated *Edwards*, no claim that the accused 'initiated' more conversation will be heard."  *Id*.  An exception to this rule exists where enough time elapses between the impermissible further interrogation and the suspect's initiation of communication with the police such that the coercive effect of the interrogation will have subsided.  *Id*. at 1539 n.8.

The Michigan Court of Appeals held that the trial court did not err in admitting Petitioner's incriminating statements to the police because his statements were admissible under the initiation exception to *Edwards*.  In reaching this decision, the Court of Appeals relied on *Hill v. Brigano*, 199 F.3d 833, 842 (6th Cir. 1999), a case in which the petitioner made an incriminating statement the day after an impermissible interrogation occurred.  The Sixth Circuit determined in *Hill v. Brigano* that, because of the time lapse and the fact that the petitioner was aware that counsel had been appointed for him, the coercive effects of the improper interrogation had subsided by the next morning when the petitioner approached officers and asked to discuss the case.

This case is similar to *Hill v. Brigano*.  Detective Delgreco's comment about the death penalty occurred on the evening of November 20, 2004.  Petitioner did not immediately respond, and he apparently was already represented by counsel in connection with another matter.  On the following morning, he indicated to Detective Delgreco that he wished to speak with him.  Although this may have been Petitioner's first opportunity to respond to Detective Delgreco's improper statement, enough time had passed between Delgreco's statement and Petitioner's

conversation with Delgreco that any coercive effects of Delgreco's death-penalty comment had subsided. The Court therefore concludes that Petitioner initiated the discussion with Delgreco and that the *Miranda/Edwards* rule was not violated. The Michigan Court of Appeals reasonably interpreted federal law when it decided that Detective Delgreco's statement was an improper interrogation, but because of the passage of time, the interrogation had lost its coercive effect by the time Petitioner initiated further contact with Detective Delgreco and made his inculpatory statement.

### 5. Whether Petitioner's Waiver of his Previously-Invoked Right to Counsel and his Incriminating Statements were Voluntary

The remaining question is whether Petitioner's waiver of the presence of counsel and his incriminating statements on the morning of November 21, 2004, were voluntary and intelligent. The Michigan Court of Appeals held that Petitioner's incriminating statements were not coerced and were properly admitted in evidence.

Once a suspect voluntarily reinitiates conversation with the police, the question becomes whether the waiver of the right to counsel was valid. *Bradshaw*, 462 U.S. at 1046. "To establish a valid waiver, the State must show that the waiver was knowing, intelligent, and voluntary under the 'high standar[d] of proof for the waiver of constitutional rights [set forth in] *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)." *Shatzer*, 130 S. Ct. at 1219 (quoting *Miranda*, 384 U.S. at 475).

> The inquiry has two distinct dimensions. *Edwards v. Arizona*, *supra*, 451 U.S., at 482, 101 S.Ct., at 1883; *Brewer v. Williams*, 430 U.S. 387, 404, 97 S. Ct. 1232, 1242, 51 L. Ed.2d 424 (1977). First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the

13

circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine*, 475 U.S. at 421 (end citations omitted).

The record indicates that Petitioner's incriminating statements were the product of a free and deliberate choice rather than intimidation, coercion, or deception. Petitioner was twenty-two years old at the time and had completed high school. There was no evidence that he was under the influence of drugs or alcohol when he made his statement. Nor was there any evidence that he was immature, in poor physical condition, or poor mental health. Additionally, the police do not appear to have misled Petitioner regarding the evidence against him, the charges, or the possible penalty.

Petitioner claimed at the state evidentiary hearing that Detective Delgreco threatened him with life imprisonment or the death penalty if he did not make a statement and that Delgreco said he would receive only two to five years for conspiracy and armed robbery if he did make a statement. Detective Delgreco testified that he merely advised Petitioner that the police did not know whether the case would be prosecuted at the state or federal level and that the death penalty was a possibility at the federal level. The trial court found Detective Delgreco's testimony to be "far more credible" than Petitioner's testimony. (Tr. June 24, 2005, at 79.) This Court must defer to the trial court's determination of the credibility of witnesses at the *Miranda* suppression hearing. *Ramonez v. Berghuis*, 490 F.3d 482, 490 (6th Cir. 2007) (citing *Hill v. Brigano*, 199 F.3d at 840-41).

The Court recognizes that "a promise of lenient treatment or of immediate release may be so attractive as to render a confession involuntary." *United States v. Wrice*, 954 F.2d 406, 411

(6th Cir. 1992) (citing *Streetman v. Lynaugh*, 812 F.2d 950, 957 (5th Cir. 1987)). In this case, however, there is no credible evidence that a promise of lenient treatment was made in return for a statement. Even if Detective Delgreco's comment about the death penalty were viewed as an implicit promise of lenient treatment in state court in exchange for a statement, "a statement about possible leniency upon cooperation is not generally impermissible." *United States v. Cruse*, 59 Fed. Appx. 72, 78 (6th Cir. 2003).

Furthermore, courts have held that informing a suspect about the possibility of avoiding the death penalty by cooperating does not amount to improper coercion rendering a confession involuntary. *See Anderson v. Terhune*, 467 F.3d 1208, 1213 (9th Cir. 2006); *United States v. Alvarez*, 54 F. Supp.2d 713, 718-19 (W.D. Mich. 1999). Informing a suspect that he would be facing the death penalty for the crime is not a threat of physical violence that is typically considered to be coercive. *Thorne v. Moore*, No. 5:06-CV-872, 2009 WL 2421741, at *41 (N.D. Ohio. July 31, 2009) (unpublished). Such comments amount to "mere[] discuss[ion of] the legal penalty for the crime, not some secondary form of physical punishment that would result from [the] failure to cooperate." *Id*. The Court therefore concludes that Detective Delgreco's comment that Petitioner might be facing the death penalty did not result in coercive conduct strong enough to overcome Petitioner's will.

The record also indicates that Petitioner's waiver of the right to counsel was made with full awareness of the rights he was waiving and the consequences of his decision to waive his rights. He was advised of his *Miranda* rights on August 20, 2004, and again on August 21, 2004, after he expressed an interest in speaking with Detective Delgreco. Thus, Petitioner's request for relief must be denied.

### B. Sufficiency of the Evidence

Petitioner alleges next that there was insufficient evidence produced at trial to sustain his convictions.  When reviewing a sufficiency-of-the-evidence claim, this Court must examine "the evidence in the light most favorable to the prosecution" to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original).  The Court must address "the substantive elements of the criminal offense as defined by state law," *id.* at 324 n.16, and defer to the state court's resolution of the claim, because the state court's application of *Jackson* is reviewable only for reasonableness.  *Malcum v. Burt,* 276 F. Supp. 2d 664, 686 (E.D. Mich. 2003).  The Court's "inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original).  "[A] habeas court must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state and defer to that resolution." *Terry v. Bock,* 208 F. Supp. 2d 780, 794 (E.D. Mich. 2002) (citing *Sexton v. Kemna*, 278 F.3d 808, 814 (8th Cir. 2002)).  A conviction may be supported by circumstantial evidence and inferences based on that evidence, and a reviewing court need not rule out all possible interpretations of the evidence.  *Dell v. Straub,* 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002).

#### 1. Felony Murder

Petitioner alleges that there was insufficient evidence produced at trial to sustain his conviction for Felony Murder.  The Michigan Court of Appeals addressed this claim on the merits and found that the evidence was sufficient.  The Court of Appeals explained the relevant

law as follows:

> The required elements to convict of first-degree felony murder are (1) the killing of a human being, (2) with malice, (3) while committing, attempting to commit, or assisting in the commission of specified felonies. *People v. Carines,* 460 Mich. 750, 758-759; 597 NW2d 130 (1999). Malice is intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result. *Id.* at 758.

> The prosecution must prove the elements of the underlying felony in order to prove the corresponding felony murder. In this case, the underlying felony is larceny. The elements of larceny in a building are (1) the actual or constructive taking of goods or property of another, (2) without the consent and against the will of the owner, (3) a carrying away or asportation of the goods, (4) with felonious intent, and (5) the taking occurred with the confines of the building. MCL 750.360; *People v. Sykes,* 229 Mich. App. 254, 278; 582 NW2d 197 (1998). The parties do not contest whether defendant committed larceny.

> The elements necessary to convict defendant as an aider and abettor are:

>> (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that the defendant gave the aid and encouragement. [*People v. Robinson,* 475 Mich. 1, 6; 715 NW2d 44 (2006) (citations omitted).]

> Thus, to convict defendant of felony murder on an aiding and abetting theory, the prosecution had to show that defendant (1) performed acts or gave encouragement that assisted the commission of a felony, (2) with the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of a felony. *People v. Riley (After Remand),* 468 Mich. 135, 140; 659 NW2d 611 (2003).

*McKinney*, 2007 WL 2807961, at *3-4.

The victim's death was a result of a fire started during the larceny. Petitioner claims that,

because he did not enter the store with the other defendants and did not know the extent of the

fire or about the death of the owner until the next day, there was insufficient evidence that the

fire or the death were contemplated as part of the crime. Petitioner's statement to the police, which was read at trial, specifically states that murder was not a part of Petitioner's plan. The crime, however, took place while the gun shop was open for business. The shop was full of guns and ammunition, which Petitioner admitted that he and his friends intended to steal, and a defendant is liable for a crime that "the defendant intends to aid or abet as well as the natural and probable consequences of that crime." *Robinson*, 715 N.W.2d at 52 . As explained by Michigan Court of Appeals, "[b]y planning the larceny of a gun shop, even though defendant did not plan the death of Alexander and he did not go into the shop during the larceny, defendant set in motion a series of events that was likely to cause death or great bodily harm." *McKinney*, 2007 WL 2807961, at *5. Petitioner should have known that some force would be needed to accomplish the goal of robbing the gun shop. The jury therefore could have inferred that Petitioner intended to create a high risk of death or great bodily harm, knowing that death or great bodily harm was the probable result. Thus, the evidence was sufficient to sustain Petitioner's felony murder conviction, and the state court's decision was not contrary to, or an unreasonable application of, *Jackson*. The Court must deny habeas relief on Petitioner's challenge to his felony murder conviction.

### 2. Accessory after the Fact

Petitioner also contends that the evidence was insufficient to convict him of Accessory after the Fact to Arson. The Michigan Court of Appeals rejected this allegation, explaining the law as follows:

> To establish arson of a building, the prosecution must show that the defendant willfully or maliciously burned a building or other real property or the contents of it. MCL 750.73; *People v. Barber*, 255 Mich. App. 288, 294; 659 NW2d 674 (2003). To establish accessory after the fact liability, the prosecution must show

that the defendant, with knowledge of another's guilt, renders aid or assistance to that other person in the effort to hinder that person's detection, arrest, trial, or punishment. *People v. Perry,* 460 Mich. 55, 62; 594 NW2d 477 (1999).

*Id.*

Accelerants were used to burn the building (Tr. Aug. 23, 2005, at 46), and Petitioner accompanied the perpetrators to the gas station before committing the larceny. (*Id.* at 75-76.) The Michigan Court of Appeals found that this evidence supported "an inference that gas was purchased to burn the gun shop." *Id.* Petitioner also saw smoke when the other men returned to the car. (Tr. Aug. 23, 2005, at 76.) This evidence supported a reasonable belief that Petitioner knew the other men had started a fire in the building. He then left the area with his companions instead of reporting the fire or attempting to assist whoever may have been in the building. His actions hindered efforts to detect, arrest, try, and prosecute his companions.

A rational juror could have concluded from the evidence viewed in the light most favorable to the prosecution that Petitioner rendered assistance after the arson. Therefore, the Michigan Court of Appeals decision on this issue was not contrary to, or an unreasonable application of, *Jackson*. The Court must deny habeas relief on Petitioner's challenge to the sufficiency of the evidence supporting his conviction for Accessory after the Fact to Arson.

### C. Prosecutorial Misconduct[7]

In his fourth and final claim, Petitioner alleges that he was denied a fair trial because of prosecutorial misconduct. The Michigan Court of Appeals concluded that the prosecutor's

---

[7] The Court opts to review this claim on the merits despite Respondent's argument that portions of the claim are procedurally defaulted.

comments were proper, made in good faith, cured by the trial court's instructions, or not prejudicial.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review," *Millender v. Adams,* 376 F.3d 520, 528 (6th Cir. 2004), and may be examined for harmless error, *Bates v. Bell,* 402 F.3d 635, 641 (6th Cir. 2005). The petitioner bears the burden of demonstrating that the prosecutor's conduct and remarks, taken in the context of the entire trial, were prejudicial and "infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974). The petitioner must show that the prosecutor's conduct was not only improper but "'so flagrant as to render the entire trial fundamentally unfair.'" *Johnson v. Bagley,* 544 F.3d 592, 597 (6th Cir. 2008) (quoting *Gillard v. Mitchell,* 445 F.3d 883, 897 (6th Cir. 2006)). The Court uses four factors to examine flagrancy: "(1) whether the evidence against the defendant was strong; (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made deliberately or accidentally." *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006).

### 1. Failure to Call Witnesses; Facts in Support of Allegations

Petitioner asserts that, during his opening statement, the prosecutor indicated that he would call certain witnesses, but he did not call the witnesses. Thus, according to Petitioner, the prosecutor implied that he had more knowledge and evidence than he presented to the jury and Petitioner was denied his right to confront the witnesses.

The prosecutor called all four individuals that he mentioned in his opening statement. He also produced the medical examiner's report as promised. Petitioner claims, however, that the

prosecutor also stated that he would call several other witnesses, who were neither called nor accounted for.  These witnesses apparently were mentioned during *voir dire* as possible witnesses to determine whether any jurors recognized their names.[8]  According to the Michigan Court of Appeals, the prosecutor qualified his comment by saying that some of the witnesses might not be called.  Assuming this is true, the Michigan Court of Appeals was correct in finding that the prosecutor's conduct was not improper.

Petitioner also argues that the prosecutor incorrectly commented during his opening statement that there would be evidence that Petitioner stayed in the car while five other men went into the gun shop, tied up and beat the victim, and started the fire.  Petitioner argues that the evidence did not show who tied up and beat the victim or who started the fire.

The medical examiner's report showed that the victim had plastic ties around his wrists and appeared to have been beaten before burning to death.  Although there was no evidence as to who harmed the victim or started the fire, it was a reasonable inference that the four or five men who entered the store were responsible.  It was also clear that Petitioner did not harm the victim or start the fire, because he was in a vehicle at the time. Therefore, the prosecutor's comment was not improper and did not prejudice the defense.

### 2.  Evidence of Flames

Petitioner next challenges the prosecutor's statement during opening and closing arguments that Petitioner saw flames coming from the gun shop.  Petitioner claims that there was no evidence that he actually saw flames coming from the gun shop.  However, he admitted in his

---

[8]  Respondent did not submit the transcript of the *voir dire* proceeding with the other state court materials..

statement to the police that he saw smoke coming from the shop.  The trial court, moreover, instructed the jurors that the attorneys' opening statements and closing arguments were not evidence, but merely meant to help the jurors understand the parties' theories.  Thus, Petitioner was not prejudiced by the disputed comments.

### 3.  Alleged Civic Duty Argument

Petitioner alleges next that, during the rebuttal to his closing argument, the prosecutor made an improper appeal to the jury's civic duty by asking the jurors to put themselves in the place of the deceased.  The prosecutor never asked the jurors to put themselves in the place of the deceased, but he did tell the jurors that they were the conscience of the community.  (Tr. Aug. 23, 2005, at 150-51.)

A prosecutor may not make closing remarks that are wholly irrelevant to any facts or issues in the case in order to arouse the jury's passions or prejudice.  *Viereck v. United States*, 318 U.S. 236, 247-48 (1943).  "But '[u]nless calculated to incite the passions and prejudices of the jurors, appeals to the jury to act as the community conscience are not per se impermissible.'" *Puertas v. Overton*, 168 Fed. Appx. 689, 701 (6th Cir. 2006) (quoting *United States v. Emuegbunam,* 268 F.3d 377, 406 (6th Cir. 2001)).  "[A] prosecutor illicitly incites the passions and prejudices of the jury when he calls on the jury's emotions and fears – rather than the evidence – to decide the case." *Johnson v. Bell*, 525 F.3d 466, 484 (6th Cir. 2008), *cert. denied*, __ U.S. __, 129 S. Ct. 1668 (2009).  The type of appeal that the Sixth Circuit has considered improper is one where the prosecutor urges the jury to send a message to other potential criminals in the community by convicting the defendant.  *United States v. Ghazaleh*, 58 F.3d

240, 246 (6th Cir. 1995) (citing *United States v. Johnson*, 968 F.2d 768 (8th Cir. 1992), and

*United States v. Solivan*, 937 F.2d 1146 (6th Cir. 1991)).

Here, the prosecutor's comments were properly directed at defense counsel's closing

argument that

> [j]uries are buffers. If not for juries, we'll have the police arresting people and
> throwing them in jail. We have a criminal justice system and the jury serves as
> the buffers between the prosecution and the accused.

(Tr. Aug. 23, 2005, at 139.)

The prosecutor responded to this argument as follows:

> You are a buffer, that's true, but you're also the conscience of the
> community. This is a time honored system that goes back over 600 years to our
> forefathers back in England, the right to a jury trial. It's not just some judge
> making a decision. It's not just some prosecutor making a decision. It's you,
> ladies and gentlemen, as the conscience of the community.

*Id.* at 150-151.

Prosecutors ordinarily are "entitled to wide latitude in rebuttal argument." *Angel v.

Overton*, 682 F.2d 605, 607 (6th Cir. 1982) (citing *Donnelly v. DeChristoforo*, 416 U.S. at 637).

Any issues raised in defense counsel's closing argument are "fair game for the prosecution on

rebuttal." *United States v. Sarmiento*, 744 F.2d 755, 765 (11th Cir. 1984). Furthermore, the

prosecutor did not "attempt to compare or to associate [Petitioner] with a feared and highly

publicized group." *Solivan*, 937 F.2d at 1154. Nor did he ask the jury to send a message to the

community or to other potential felons. He merely exhorted the jury to do its duty. It is not

improper to urge jurors to fulfill their societal duty, *Byrd v. Collins*, 209 F.3d 486, 538-39 (6th

Cir. 2000), or "to remind the jury that there is a general 'community or societal need to convict

guilty people.'"  *Reed v. United States*, 133 Fed. Appx. 204, 209 (6th Cir. 2005) (citing *Solivan*, 937 F.2d at 1155).

 Even if the remarks were improper, they were not "so egregious as to render the trial fundamentally unfair," *Angel*, 682 F.2d at 608, particularly under the "'stringent standards applicable on habeas review.'"  *Durr v. Mitchell*, 487 F.3d 423, 441 (6th Cir. 2007) (quoting *Byrd v. Collins*, 209 F.3d at 539), *cert. denied*, __ U.S. __, 128 S. Ct. 1652 (2008).  Therefore, Petitioner is not entitled to relief on the basis of the prosecutor's alleged "civic duty" argument.

### 4. Alleged Misstatment of Petitioner's Involvement in the Crime

Petitioner claims that the prosecutor misstated the facts during closing argument by asserting that Petitioner knew what was going on inside the store during the robbery.  Petitioner claims that the comments about his involvement in the crime were not supported by the evidence and that the prosecutor improperly inserted his own personal beliefs by opining that Petitioner should have gone into the store to help Mr. Alexander.  (Tr. Aug. 23, 2005, at 151-52.)

Prosecutors may not misrepresent the facts or assert facts never admitted in evidence. *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000).  They may, however, "argue the record . . . and forcefully assert reasonable inferences from the evidence." *Bates v. Bell*, 402 F.3d at 646.

Petitioner admitted to the police that he planned a robbery and that he rode with his companions to the gun shop.  Therefore, it was reasonable for the prosecutor to argue that Petitioner knew what was going after his companions entered a store full of guns and ammunition during business hours while someone presumably was working.  The comments were not improper.

### 5.  The Reference to Exculpatory Statements

Lastly, Petitioner claims that during closing arguments, the prosecutor indicated that exculpatory statements in Petitioner's confession were made to negate his involvement.  (Tr. Aug. 23, 2005, at 135.)  Petitioner interprets this remark as a personal opinion about his guilt.

"Ordinarily, a prosecutor may not express a personal opinion concerning the guilt of the defendant . . . , because such personal assurances of guilt . . .  by the state's representative exceeds the legitimate advocate's role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof."  *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999), *abrogated on other grounds as explained in Mackey v. Dutton*, 217 F.3d 399 (6th Cir. 2000).   The evidence at trial showed that Petitioner spent a week planning the crime, and before he arrived at the gun shop, he and the other men stopped at a gas station.  The larceny occurred during the daytime and while another car was parked nearby, indicating that someone was in the building.  The fire was intentionally lit with accelerants, and Petitioner saw smoke coming from the building.  It was reasonable for the prosecutor to infer that the Petitioner might not have said all he knew in his statement or that he may have been trying to lessen his culpability.  Further, the judge instructed the jurors that opening statements and closing arguments are not evidence, thereby curing any prejudice.

### 6.  Summary

The prosecutor's statements were not improper or flagrant enough to warrant a new trial, and the evidence against Petitioner was strong.  His written statement clearly showed that he was involved in the larceny, and it provided evidence from which a reasonable jury could infer his guilt.  The prosecutor's disputed statements were not extensive and resulted in very little

prejudice to Petitioner. Therefore, the request for relief based upon prosecutorial misconduct must be denied.

## IV. Conclusion

The state appellate court's rejection of Petitioner's claims did not result in an unreasonable determination of the facts or in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent. Accordingly, the petition for writ of habeas corpus is **DENIED**.

Reasonable jurists could disagree with the Court's resolution of Petitioner's claims and conclude that the issues are adequate to deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Consequently, a certificate of appealability may issue on all of Petitioner's claims.

s/John Corbett O'Meara
United States District Judge

Date: April 29, 2010


I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, April 29, 2010, using the ECF system and/or ordinary mail.

s/William Barkholz
Case Manager
